Mr. Lee, you have reserved four minutes for the vote. Is that correct? Yes. Yes. All right. So that gives you six minutes to begin. So the floor is yours. You may proceed. Great. Thank you, Justice. So the issue before the court today is if an employee is told to arrive at a certain time, but they're precluded from working, whether the employee needs to be paid for that time. Now, there is a certain spiritual conflict for me in regards to this issue is because as an employer, I'll win even if I lose today. So, for example, I have a small office and I have some longstanding employees, one of whom is a paralegal named Louis. So he's been with me a long time and love him to death. He works hard and he'll come to the office at 10. But his job is to actually speak to clients, whether on the phone or in person. So if he doesn't actually talk to a client by phone or in person, he's mostly just hanging out. He can hang out. He can surf the Internet. He can pay his bills and usually I have no problem with that. And so if I lose the case today, I'm going to go back to the office and tell Louis, you know, Louis, you know, I love you, man. You've been working for me for over 10 years. But when you come in at 10 in the morning and you're on time every day, I'm not going to pay you until somebody calls you and talks to you. And it could be half an hour. It could be an hour. I mean, I guess that's all nice. But I mean, there is some bylaw here when I'm writing a blank slate. And so you've cited cases that are primarily cases involving things like firefighters and other workers who sort of are paid to be on call, available on demand. And it doesn't seem that the same can be said for your clients in this case. And I don't know about your employees. Sure. So in regards to the case law, the most relevant case law is the Supreme Court case integrity staffing versus bus. And in that case, the court provides a integral and indispensable test. If you're doing preliminary work that's not integral or indispensable, you don't have to be paid for it. So why is waiting for the doors to open integral or indispensable? In those other situations, the employer is not telling the employee they have to be there at that time. But some of the other cases involve situations where employees had to go through screening or they had to wait to don certain equipment or clothing. And that was deemed not to be integral or indispensable. If those are not, this would seem to be clearly not, it would seem to me. I think the difference in those cases is that the employer is requiring employees to do certain preliminary or post-preliminary activities. So, for example, in bus, the employer, to avoid theft, has employees go through a security check. Now, there's no timing on that, right? The employees, it could go very fast or it could go very slow, but it's considered a non-integral activity. But I think the difference here really is whether the employee is waiting to work or they're engaged to wait. And so the court would be cognizant of if somebody was, had, let's say, hired a chauffeur, most of the time the chauffeur's not driving all the time, he's double parked outside, right, to avoid the employer getting a ticket, right? And so that person is engaged to wait. And similarly here, because there's a hard time that the employee is asked to arrive, the employee is engaged to wait. Can I shift to the de minimis question for a second? For purposes of evaluating whether the violation here is de minimis, are we able to extrapolate to the putative class or do we have to evaluate your client's aggregate unpaid time by itself? The case is played as a class case, and so I believe it would be appropriate for the court to consider in the aggregate what the damage is, but even if the court is not aggregating damages on a prospective class, the claim is not de minimis, right? The person is an hourly worker on a monthly basis, on a weekly basis she'd be short 15 minutes. On a monthly basis she'd be short an hour. I don't think even for an employee that would be considered de minimis. I guess what I'm struggling with a little bit is that if your client was still working there and had sort of ongoing prospective employment that we could kind of extrapolate, but am I understanding it that it was four occasions? It's more than four. The claimant worked there for about four months, so the first six weeks was training. So it's about, give or take, two and a half months, three months of damages. Was the de minimis issue properly preserved for this appeal? I thought it was only raised for the first time in the reply brief below. I'm sorry, Justice, what issue was raised for the first time? De minimis. Oh, yes, the defendants had raised that for the first time on the reply brief, correct. So why aren't we free to disregard it? I agree that the court should disregard that argument. All right. Well, you've reserved four minutes of rebuttal, Mr. Meese, so we'll now hear from Mr. Burns. Great. Thank you. Thank you. Jason Burns for Defendant Appellant, Legal U.S. LLC. Your Honors, may it please the Court. Thank you. BUSC and IBP squarely resolve this case. If you look at what Plaintiff is arguing, what Plaintiff argued here to the Court today, one, he says, well, my client was required to be at the parking lot at a certain time. BUSC makes very clear that just because an employee is required to do something by the employer, that has no relevance to whether or not the Portal to Portal Act applies. Well, but in terms of showing up and waiting, doesn't IBP specifically say our analysis would be different if Barbara was required its employees to arrive at a particular time in order to begin waiting? Isn't that exactly what's alleged here? Your Honor, I wouldn't agree with that for two reasons. Okay. One, after IBP, there's two issues in IBP. One is the requirement to be there. And two, to be at the workbench or place of principal activity. BUSC arguably makes the reference to a requirement to be there in the regulation irrelevant and no longer to be considered. That's the point that Bridges makes in the Fifth Circuit. But even putting that aside. So before we put that aside, I want to make sure I understand the point we're putting aside. You're saying that 29 CFR 790.7H, you're saying is actually defunct? The specific reference within that regulation to the relevancy of the fact that the employer required the employee to be at a certain place, I believe after BUSC, is no longer relevant because that's exactly the argument that was presented to the court in BUSC, whether or not the preliminary activity was required and for the benefit of the employer. And the court said no, that's not relevant to our analysis of the Portal to Portal Act. Second, and even if the court doesn't agree with that, the regulation is speaking to arriving at the workbench or principal place of activity. Here, that was not the case. The employee was in the parking lot, several steps removed from where the principal activities were taking place. Well, only because there's a locked door between, I mean, it's not several steps. Functionally, the plaintiff is at the door, and the place of work is one step further inside the door once it gets unlocked by the manager. I don't understand why that's a, I guess, significant distinction. Well, in IBP, for example, the employee was even closer. The employee was waiting. The employee was already within the work site, was already within the building, was waiting to get into the locker room, which the court had found that is the place where the principal activity took place. So even there, there was less of a, it was less attenuated than it is here. So are there any limits on this? The employer can say, I want to, I just want to make sure there's no tardiness, so I'm going to require employees to show up half an hour before the beginning of their shift, and they're going to get in trouble if they don't show up a half an hour before the beginning of their shift. And if they do show up, most of the time I'm going to bring them in, and they're going to clock in, and they're going to get paid for that time. But a significant portion of the time they're not, and it's no obligation to pay. I understand the fairness argument that you're making, Your Honor. I think Gorman actually and Busk addresses this directly. I'm having real trouble seeing the relevance of Busk. Busk didn't involve anything like the facts here. But if I recall, the question in Busk was a post-shift security screening, and the Supreme Court held that the screenings were not an intrinsic element of the employee's work and that the employer, quote, could have eliminated the screenings altogether without impairing the employee's ability to complete their work. It seems to me that's a totally different and distinguishable situation from the one here. Why do you think Busk—you're saying Busk actually overruled the regulation, if I heard you right. I'm saying the reference in the regulation to a requirement that an employee be somewhere is not consistent with what's in Busk. I would like to— So I'm just trying to play out the implications of that, because it seems like if you apply that to every circumstance, it's hard to figure out how a lot of these regulations, including the on-call regulations, right? You're sitting in the fire station waiting for a call. Your employer is requiring you to be there waiting for the call. But on your reasoning, because they're not doing anything other than waiting, they're not on the clock for purposes of the compensation. I think the fire example is different, and I think one of the problems is the way that plaintiff has framed this idea of waiting time and on-call time. We're putting the cart before the horse. When you're talking about preliminary activities, the first order of business is to decide whether or not they are integral and indispensable. And only then would you get to the concepts in waiting time and on-call time as to whether or not, for example, an employee is required to be somewhere, whether or not an employee— whether or not the activity in question is for the benefit of the employer. There's no question that somebody who is waiting to doff some type of equipment is— That's algorithms, right? That's IBP, yes. There's no question that that employee is under the control of the employer. There's no question that that employee is not using that time for their benefit. We wouldn't say that the regulations somehow trump IBP or dispense with the need to engage in the analysis as to whether or not those activities were integral and indispensable. But I'm right that your argument here requires us to say essentially that the regulations, as to the definition of preliminary and post-preliminary activities, and in particular as it relates to waiting time, where the distinction does hinge on whether you're required to be there at a certain time to wait versus whether you voluntarily show up and wait, all of that is out the window in your view in light of these subsequent Supreme Court decisions. I think BUS calls that into question. And I think, same as in IDP, that the regulation that is more appropriate is the regulation dealing with waiting time, waiting in line. Conceptually, there is no difference between waiting in line to check in and waiting in your car in a parking lot to check in, which is happening here. But if you're required to show up at a particular time in order to begin the waiting, IBP itself acknowledges that it would be a different case. Our analysis would be different. This is that different case. Are we also to disregard that statement by the Supreme Court in the IBP case? That coupled with being at your place of performing the principal activity, which is the difference between this case and IBP. Plaintiff was not at her principal place of activity. She was not in the store. She was not stocking shelves. There is no dispute about that. In IBP, they weren't at their workbench. They were waiting to get donned off. I'm just trying to understand that distinction. And I understand that point as well. But if you remember, in IDP, the court had found that donning in that case, not waiting for donning, but donning was, in fact, integral and indispensable. And under Steiner, being integral and indispensable to a principal activity is the same thing as being engaged in a principal activity. So in IDP, the court had essentially found that the employee was already in the locker room, was already at their place where the principal activity was being performed. And IDP is — So the distinction is that you're not denying that if the court required you to show up 20 minutes before your shift for the purpose of donning and doffing, in that IBP case, then in that circumstance, they would be on the clock for purposes of compensation. Not if somebody is in the parking lot. No, no. In the case I'm talking about, in the Alvarez case, if they were required to be in the locker room 15 minutes before, weren't at their workbench, they weren't even donning and doffing yet because they were still waiting, but they were required to be there for that waiting, that's compensable time. If that requirement is integral and indispensable to performing the productive activity, which is what the case is speaking to. Right. I'm just — I'm trying to understand the distinction because the waiting in this case — I mean, the productive activity is being inside the store. Once you're inside the store, you're doing the work, right? We don't wait and see whether you went to the bathroom and got a coffee and did this and that. You clock in the second you get through that door, and nobody is suggesting otherwise. And you're saying because the employer locks a door between where you are when you're required waiting, and when they do unlock the door during that early 15 minutes, you do get to clock in. This is not work. I'm having a hard time. In almost any situation when you're dealing with a preliminary activity, the employer is going to be preventing the employee from actually going and clocking in, including in Gorman where we're talking about a much longer period of time, 10 to 30 minutes on both sides of the day. If you show up at that workplace, you have somebody who is coming, for example, and performing a security check inside of your car. In almost any hourly employment, there's going to be a requirement that somebody shows up for a certain time out of shift. And if you add preliminary — Just so I'm clear on the facts here. Yes, Your Honor. If an employee here had not shown up at 7.45, they could have been fired, yes? So, Your Honor, the allegation is that they were required to be there at 4.45. There's no allegation that they were — 7.45, wasn't it? It's 4.45, Your Honor.  I'm sorry. There is no allegation that they were actually — plaintiffs make this argument in their papers, but there's no allegation that they were actually required to clock in at 4.45. If they did clock in, were they then paid from the time they were clocked in? Yes. So that the employer did consider them working on their regular job as of on the most days when they did clock in at that time from 4.46, whatever it was? When they were clocked in, they were paid for that work. But a fourth of the time, or once every four shifts, as plaintiff alleges, they did not clock in until 5 p.m. Sorry, until 5 a.m. Because the door was open.  But there's no allegation that plaintiffs on those days were not able to perform their productive activity or their principal job duties. So this idea that arriving at 4.45, that being on time at that specific time was integral and indispensable is not borne out by what's in the allegations in the complaint. The complaint actually shows the opposite, that whether or not a plaintiff showed up at 4.45 or at 5 p.m., the activities were still performed nonetheless. All right. Thank you. Mr. Burns, we'll hear from Mr. Lee for a rebuttal of up to four minutes. Thank you, Justices. I'd like to help clarify the distinction. I think the other case is the employees get in early from their scheduled time. So they get in early so that they can do the preliminary activities. And their lawsuits were about the time spent on the preliminary activities. And they come in early to engage in those preliminary activities so that they can actually be on time for the start of their scheduled shift. I guess I don't see the difference. If I have to show up a half hour early so that I can put on protective gear, why is that different than I have to show up early to make sure I'm ready to go as soon as that door is unlocked? Waiting in a car or waiting in line to wear the gear?  Sure. Because some people might be super fast dressers, right? They may not need to show up 30 minutes ahead of time. They may only need to show up five minutes ahead of time to get the protective gear. In the Alvarez case, I mean, people might have been fast dressers, but they were just waiting in the line. They couldn't come any faster. And they still were not deemed to be engaged in an indispensable and integral activity. Understood. But the difference is, if their employer were to tell them, you have to get here at a certain time, no matter what, whether you're changing into protective gear, whether you're getting your equipment together, or other things. Once an employer tells an employee what time to show up, then they're engaged to wait. Right? And so most of my staff, most of anybody's staff, are engaged to wait. Well, I don't care that much about your staff. I guess I'm caring about cases. So what are your best cases for this proposition? Once you tell somebody what time to be there, then that waiting time is integral and indispensable. Well, the best cases are Alvarez. In Alvarez, they specifically address this point. They say, they cite the regulations, CFR 797H, and say that when an employee is required by his employer to report at a particular hour at his workbench or other place where he performs his principal activity, if the employee is there at that hour, ready and willing to work, but for some reason beyond his control, there's no work for him to perform until some time has elapsed, waiting for work would be an integral part of the employee's principal activities. That's in Alvarez. But it goes on to say that waiting to don his protective gear, which is, that's something they have to, you can't work without that gear, right? That's right. And that's being two steps removed from the integral job, which is meatpacking. But the claimant here, her being on time is integral and indispensable. She is stocking food and other perishable items, right? So when the food comes, they might be, like, frozen food. They might be food that needs to be refrigerated. The employer wanted her to be there early. So there's a reason the employer, if she didn't need to be early, she would just get there at 5 o'clock. And it's not really early, right? You've made the point that if the store opens at 5 and she's required to be there at 445. That's correct. She's being on time if she gets there. That's correct. It's actually a misnomer, her start time. Her start time is really at 445. Wouldn't the same be said in Alvarez? Your start time is really then a half an hour before the clock kicks in because you've got to wear the gear. You can't start without that gear. Not necessarily, Justice. In Alvarez, the employer is not telling the person they need to get there at a certain time. They can get there a little bit earlier. They can get there a little bit later. It may be a day where a lot of people are calling in sick, right? And so – Forgive me for interrupting, but I didn't see your complaint. Maybe I missed it. That the employer expected the employees to begin their work at 445. Yes. It is in your complaint? Yes. Where? So – Is it paragraph 33 to 35? Yes. Yes, yes, Justice. In Alvarez, if the folks got in early and were able to get their equipment on, quickly, would they then go on the clock before their scheduled shift started because they had been quicker in getting their gear? Yeah. I mean, but that situation is – Do you know the answer? I don't know the answer, but the issue here is very different from Alvarez. And I just want to stress an adverse ruling against the appellant here would actually result in a situation where employers can say, your principal activities that you're engaging during the course of the day is on and off. So, for example, you could be working a little bit, and with all the technology and eyeball tracking and phone and video monitoring, an employer can say, hey, I'm only paying you when you're actively working. When you're not and you're taking a break, that's a postluminary activity, and I'm not going to pay you for that. And then when your attention span refocuses on the job, I'm going to restart paying you again. And so an adverse ruling would result in such an extreme scenario for employers. And that's a real power imbalance for employees. Thank you. I'm sorry. I want to go back to the two paragraphs you mentioned. So paragraph 33 of the complaint says, Plaintiff was scheduled to work opening shifts which began at 5 a.m. before defendant's stores were open for business. FLSA-collected plaintiffs and opening subclass members were similarly scheduled to work opening shifts, which began before the respective store hours of business. However, defendant required all employees, including plaintiff FLA, FLSA-collected plaintiffs and opening subclass members, to arrive to work 15 minutes before the start of all scheduled shifts. So I don't see in 33 quite was the allocation that they were expected to start work at 445. And then 35 says, Although plaintiff personally arrived to work before her scheduled start of 5 a.m. is required, by defendant the scheduled opening manager regularly did not arrive until 5 a.m. or after, because plaintiff could not clock in until defendant's managers arrived, plaintiff was not paid for any time spent waiting for opening managers to arrive, FLSA-collected plaintiffs and opening subclass members were similarly regularly unable to clock in upon their personal arrivals due to their stores being locked, and were not paid by defendant for all time spent off the clock waiting for their managers to arrive and unlock the store. So I'm seeing there that they were required to show up at 445, that if they did gain entrance, they were paid for the time, but I don't see the point I was asking about, which is that it was expected that they would start work before 5 a.m. In paragraph 34, it says, Employees must wait for the scheduled opening manager to arrive, unlock the store, and grant access to the employees. Once employees are granted entry into their stores, they are then able to access their time machines and clock in for work. I understand they get paid for the time before 5 a.m. and that they clock in before that, but I'm asking that more, and it may not be relevant, but I just wanted to make sure I understood. I don't see the complaint, the specific allegation, that the employer expected them to begin actual work at 445. Well, I think it's when we say clock in for work, once they're clocking in, they're working, in paragraph 34. If that pleading glitch that you just discussed was an obstacle, would you be able to amend your complaint? Would you be able to plausibly allege that the employers expected them to arrive 15 minutes before opening and to begin working? Yeah, absolutely. I mean, there's no reason they would want them to come in early other than to work. Yes, we absolutely could, and if the appellate court here can direct the lower court to allow us an amendment, we could definitely do that. But you're asking them to be paid for the time after they've clocked in and the time before they've clocked in, right? Only to the extent that they weren't able to be clocked in when they arrived early. Correct, correct, Justice. I guess it's still unclear to me why this is different than in Alvarez. They have to get there early enough to put on protective gear, and yet that's still not compensable time, because putting on the gear is not deemed indispensable. Well, here they're asked to arrive at a certain time, and so it's really a power imbalance. I mean, an employer can tell an employee to come in at a certain time and have no work for that. The punch-in, punch-out is really just a procedural issue, right? It's really, what time are you here to work? Is it 445? The punch-in, punch-out clock is really irrelevant other than to just track the hours. They're supposed to be paid at 445, whether the punch-in. What I don't understand is if the manager doesn't get there until 5. Only for that one day. Okay. Well, how would the manager even know whether the workers were there 15 minutes early or 5 minutes early? The manager is on time every day, except once a week the manager is late, and that once a week is the shortfall that the claimant is asking for recompense. Is there an allegation that you showed up 5 minutes before the manager? No. The manager is supposed to get there at 445, just like the employee. If the employee got there early, and by early I don't mean 445. I think it's very confusing when you describe that as early. That's on time. If the employee shows up at 440 because they want to make sure they're there at 445, are you asking that they be paid for the time period between 440 and 445? No. That's the Alvarez matter. But you've described the shift as 5, right? Well, the technical shift— You said 5. I apologize for the misnomer, because their official shift starts at 5, but employees are told to get in before your shift, get in at 445. Right. Well, it said Alvarez folks were told to get in before their shift so that they could have time to put on protective gear. I don't think they're— Here, she is told to come here and start working. And there, they're told to come in early, but not at a certain time. They can come in very early. They can come in a little bit early. But they're only going to be paid in Alvarez when they start their working time. Here, she is supposed to be working at 445. She's told to come here to work at 445. She has to make all kinds of accommodations. And this is not just for her. It's for other employees also in the prospective class. And depending on how the court rules, they may affect other employees in the Second Circuit. But when an employee comes to work, they're setting up babysitters, right? They've got to, like, expend certain costs to get to work on time. And when you're telling an employee, oh, get to work on time, but we're not going to pay you until your actual integral and indispensable activity is starting, then I think employees are being shortchanged. All right. Well, we will reserve the decision. Thank you both. Thank you. Thank you.